FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 26 2017 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

– against –

FAROOQ AHMAD,

              Defendant.

---

16-CR-92

Statement of Reasons Pursuant to
18 U.S.C. § 3553(c)(2)

**JACK B. WEINSTEIN, Senior United States District Judge:**

**Appearances**

**For United States:**

    Girish K. Srinivasan
    United States Attorney's Office
    Eastern District of New York
    271 Cadman Plaza East
    Brooklyn, NY 11201
    718-254-6013
    karthik.srinivasan@usdoj.gov

**For Defendant:**

    James E. Toner
    114 Old Country Road, Suite 630
    Mineola, NY 11501
    516-294-1133
    tonerlawfirminfo@gmail.com

Table of Contents

I.   Introduction ............................................................................................................. 1
II.  Facts ........................................................................................................................ 1
   A. Offense .............................................................................................................. 1
   B. Arrest ................................................................................................................ 2
   C. Guilty Plea ........................................................................................................ 2
   D. Sentencing Hearing ........................................................................................... 2
III. Offense Level, Category, and Sentencing Guidelines Range ................................ 2
IV.  Law ......................................................................................................................... 3
V.   18 U.S.C. § 3553(a) Considerations ....................................................................... 4
VI.  Sentence ................................................................................................................. 6
VII. Conclusion ............................................................................................................. 6

I. Introduction

Farooq Ahmad is a permanent resident of the United States with no previous criminal record. Presentence Investigation Report, ("PSR") at 2. On August 18, 2016, he pled guilty to one count of "defrauding one or more unauthorized access devices," in violation of U.S.C. §§ 1029(a)(2) and 1029(c)(1)(A)(i). *Id.* at ¶ 1. In layman's terms, he participated in a scam that stole millions of dollars from financial institutions by opening bank accounts and lines of credit using fabricated identities. *See id.* ¶¶ 8-11. On September 13, 2017, he was sentenced to one year and one day in prison, three years of supervised release, and a $100 special assessment. *See* Sentencing Hr'g Tr., Sept. 13, 2017 ("Hr'g Tr.").

II. Facts

A. Offense

Over the course of several years, Ahmad and his co-conspirators created synthetic identities—fake names attached to made-up personal identifiers such as birthdates, addresses, and social security numbers—and shell companies to bilk unsuspecting financial institutions out of millions of dollars. They mainly engaged in "check-kiting," where a person deposits fake or overdrawn checks in an account and withdraws the money before the bank can clear and reject

1

the check (*see* PSR at ¶¶ 5, 9-11, 15), and "credit card bust-outs," where they work with cooperating merchants to rack up fraudulent charges on a credit card with no intention of repaying the debt. *See id.* at ¶¶ 6, 9-11, 17-28. It is unclear exactly how much money was stolen through this scheme; the government's conservative estimate is that Ahmad's role in the offense assisted in a real loss of $2 million. *Id.* at ¶ 39.

### B. Arrest

Defendant was arrested on December 4, 2015. *Id.* at ¶ 39. He was released on bond with pretrial reporting conditions the same day. *Id.* at 1.

### C. Guilty Plea

Ahmad pled guilty to one count of to one count of defrauding one or more unauthorized access devices in violation of U.S.C. §§ 1029(a)(2) and 1029(c)(1)(A)(i). *Id.* at ¶ 1.

### D. Sentencing Hearing

The sentencing proceedings were videotaped to record courtroom atmosphere, as well as some of the subtle factors and considerations that a district court must consider in imposing a sentence. *See* 18 U.S.C. § 3553(a); *In re Sentencing*, 219 F.R.D. 262, 264-65 (E.D.N.Y. 2004) (describing the value of video recording for the review of sentences on appeal).

## III. Offense Level, Category, and Sentencing Guidelines Range

The base offense level for his offense is 6. PSR at ¶ 47; 18 U.S.C. § 1029(a)(2); United States Sentencing Guidelines ("U.S.S.G.") § 2B1.1(a). Sixteen levels were added because the offense caused a conservative real loss of $2 million, and two levels were added because Ahmad derived more than $1 million in gross receipts from financial institutions. PSR at ¶¶ 48, 52; U.S.S.G. §§ 2B1.1(b)(1)(I), 2B1.1(b)(16)(A). The methods employed by the scammers resulted in several enhancements: two levels were added because they intentionally used sophisticated means; two more levels were added because they used fraudulent credit cards; and two more

levels were added because there were more than ten victims. PSR at ¶¶ 49-51; U.S.S.G. §§ 2B1.1(b)(2)(A)(i), 2B1.1(b)(10)(C), 2B1.1(b)(11)(B)(i). The offense level was increased a further four points because Ahmad organized a group of at least five people to participate in the crime. PSR at ¶ 54; U.S.S.G. § 3B1.1(a). His offense level was decreased three levels for accepting responsibility for his crime and for timely notifying the government of his intention to plead guilty. PSR at ¶¶ 58-59; U.S.S.G. §§ 3E1.1(a), 3E1.1(b).

The total adjusted offense level is 31. PSR at ¶ 60. Defendant has a criminal history score of zero, which establishes a criminal history category of I under U.S.S.G. Ch. 5 Pt. A. *Id.* at ¶ 63. The Guidelines sentencing range is 108 to 135 months, though there is a maximum statutory sentence of 120 months. *Id.* at ¶ 91; U.S.S.G. § 5G1.1(c)(1).

One to three years of supervised release are recommended by the Guidelines. PSR at ¶ 93; U.S.S.G. § 5D1.2(a)(2).

Restitution is mandatory. PSR at ¶¶ 101-02; 18 U.S.C. § 3663A; U.S.S.G. § 5E1.1.

IV. **Law**

Pursuant to the Supreme Court's decision in *United States v. Booker*, the Guidelines are advisory; a sentencing court may depart from the Guidelines in the interest of justice as well as in light of other statutory concerns as expressed in section 3553(a). *United States v. Booker*, 543 U.S. 220, 245-46 (2005); *see also United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) ("It is now, however, emphatically clear that the Guidelines are guidelines – that is, they are truly advisory. A district court may not presume that a Guidelines sentence is reasonable; it must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense." (footnote omitted)).

A sentencing court shall "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). If the sentence is not of the kind prescribed by, or is

outside the range of, the Sentencing Guidelines referred to in section 3553(a)(4) of title 18, the court shall indicate the specific reasons for imposing a different sentence. *See* 18 U.S.C. § 3553(c)(2). These "reasons must also be stated with specificity in a statement of reasons form." *Id.* Even though the Guidelines are now advisory rather than mandatory, *Booker*, 543 U.S. at 245, the sentencing court must still adhere to the requirements of 18 U.S.C. § 3553(c)(2). *United States v. Jones*, 460 F.3d 191, 197 (2d Cir. 2006).

The court's statement of reasons must be "a simple, fact-specific statement explaining why the Guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Rattoballi*, 452 F.3d 127, 138 (2d Cir. 2006), *abrogated in part on other grounds by Kimbrough v. United States*, 552 U.S. 85 (2007). Such a statement should demonstrate that the court "'considered the parties' arguments' and that it has a 'reasoned basis for exercising [its] own legal decisionmaking authority.'" *Cavera*, 550 F.3d at 193 (alteration in original) (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)).

In view of the excessive incarceration rates in the recent past and their unnecessary, deleterious effects on individuals sentenced, society, and our economy, parsimony in incarceration is to be prized. *See, e.g.*, 18 U.S.C. § 3553(a) ("The court shall impose a sentence [that is] sufficient, but not greater than necessary."); National Research Council of the National Academies, *The Growth of Incarceration in the United States, Exploring Causes and Consequences* 8 (2014) ("*Parsimony*: the period of confinement should be sufficient but not greater than necessary to achieve the goals of sentencing policy.").

## V. 18 U.S.C. § 3553(a) Considerations

The court considered the "nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Ahmad was born in 1970 in Pakistan, the eldest of nine children. PSR at ¶¶ 68-69. As a member of the Ahmadiyya sect of Islam, his family faced life-threatening religious persecution. *See* Def.'s Mem., ECF No. 131, at 6-9. Ahmadis, who follow the Quran and Five Pillars of Islam, consider themselves to be Muslims, but are considered blasphemers by the government of Pakistan. *Id.* at 6. Pakistan's Ordinance XX, promulgated in 1984, excludes Ahmadis from practicing Islam publicly and criminalizes their use of the phrase *as-salaam-alaikum*, a common greeting. *Id.* at 8.

In 1985, Ahmad was walking home from a market with his father when three mullahs stopped them. One shot Ahmad's father in the chest, and he died in Ahmad's arms. *Id.* at 8-9. His father's dying wish was for Ahmad to take care of his mother and siblings and to continue practicing his religion. *Id.* at 9. The murderer was taken into custody, but eventually released with little punishment after thousands of mullahs intimidated the authorities holding him. *Id.*

Ahmad tried to provide for his family through cultivation of the sustenance farm they lived on. But the family lived under constant threat. He fled to the United States seeking refuge. *Id.* Though these events occurred over thirty years ago, its lasting impact on Ahmad is plain: he wept inconsolably at the sentencing hearing when describing his father's death and his family's persecution.

The defendant is married with two children. *Id.* His wife and children (American citizens) live in Pakistan. He has a strained relationship with his wife, but is a good father to his two children and speaks with them daily. *Id.* at 9-10.

Because he was thrust into the role of breadwinner, Ahmad's highest level of educational attainment is completion of the 9th grade. PSR at ¶ 79. He worked for twenty years as a livery car driver, and more recently, as a site supervisor for a contractor. *Id.* at ¶¶ 81-84.

Ahmad is obviously remorseful about his crime.

He hopes to visit his sick mother in Australia before she dies in the near future. Hr'g Tr. This is a reasonable ground for a shorter period of incarceration.

## VI.     Sentence

The defendant is sentenced to one year and one day in custody. A $100 special assessment is imposed. 18 U.S.C. § 3013. Defendant is ordered to forfeit $1 million. PSR at ¶ 103. Restitution is ordered. *Id.* at 101-02. No fine is imposed because of the defendant's inability to pay given the forfeiture order. *See id.* at ¶ 89.

He is sentenced to three years of supervised release. During supervised release, in addition to the usual conditions, Ahmad must cooperate with immigration authorities. Hr'g Tr. He should be promptly deported upon his release from custody.

General and specific deterrence are achieved by the sentence imposed. Defendant has complied with the conditions of pretrial supervision without any issue of non-compliance for twenty-one months. Hr'g Tr.

Incarceration is necessary. Scams like this one shake confidence and trust in the financial system our economy depends upon. Given the nature and circumstances of the defendant's upbringing and his offense—and that immediate deportation is looming once he leaves custody—a longer custodial sentence would be overly burdensome on defendant and taxpayers. He understands the gravity of his actions. As a first time offender it is unlikely that he will violate the law again.

## VI.     Conclusion

All relevant elements of the Guidelines and statutes have been considered. Respectful consideration was given to the Sentencing Commission's policy statements, and all other factors

6

listed under section 3553(a) of title 18, to ensure that the sentence is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a).

SO ORDERED.

/s/ Jack B. Weinstein
Jack B. Weinstein
Senior United States District Judge

Dated: September 15, 2017
Brooklyn, New York